UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MARIA RAND, et al., :
                Plaintiffs, :
: **ORDER ADOPTING**
: **REPORT AND RECOMMENDATION**
: 04-CV-00349 (DLI) (KAM)
        -against- :
:
VOLVO FINANCE NORTH AMERICA, et al., :
:
                Defendants. :
-----------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiffs Maria Rand, her husband, Archie Rand, and their son, Benjamin Rand (collectively, "plaintiffs") brought suit in New York state court on December 22, 2003 against Volvo Finance North America, Inc. ("Volvo") and Melanie Stern ("Stern"), alleging that Maria and Benjamin Rand were injured in a collision with a vehicle operated by Stern and owned by Volvo. Maria Rand and Benjamin Rand seek damages for the personal injuries they alleged to have suffered. Maria Rand also seeks damages for the value of the vehicle which Benjamin Rand was driving and in which she and her husband were passengers. Archie Rand seeks damages for the loss of society, services and consortium of his wife as a result of her injuries.

The action was removed to this court by defendant Stern on January 29, 2004. Defendants moved for summary judgment pursuant to Fed. R. Civ. Pro. 56, on the ground that plaintiffs Maria Rand and Benjamin Rand have not sustained a serious injury within the meaning of New York State Insurance Law § 5102(d). By order dated October 23, 2006, this court referred the motion to U.S. Magistrate Judge ("MJ") Kiyo A. Matsumoto who issued a Report and Recommendation ("R&R"), dated March 28, 2007, recommending that this court deny defendants' motion for summary judgment

in its entirety. Both defendants Stern and Volvo filed timely objections to the R&R on April 6, 2007 and April 11, 2007, respectively. The court incorporates herein the summary of facts as set forth in MJ Matsumoto's R&R. For the reasons set forth below, the court adopts the R&R in its entirety.

## Discussion

When reviewing a magistrate judge's report, a district judge must make a *de novo* determination with respect to those parts of the R&R to which any party objects. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b); *United States v. Raddatz,* 447 U.S. 667, 673-76 (1980). The district judge to whom the case is assigned shall consider such objections and shall adopt, modify, or set aside the magistrate judge's report. *Id*.

Defendants' sole objection involves the portion of MJ Matsumoto's R&R finding that the absence of medical records showing restrictions in plaintiffs' ranges of motion immediately following the July 24, 2003 accident was not dispositive, but rather an issue of credibility and probative value best considered by the fact-finder. (R&R p. 21 n. 2.) Defendants contend that by not proffering range of motion test results contemporaneous with the accident, plaintiffs' evidence of personal injury failed to meet the statutory threshold set by New York State Insurance Law § 5102(d), commonly known as New York's No-Fault Insurance Law. The court finds no merit to defendants' objection.

New York substantive law governs this action pursuant to the well-settled choice of law principles in diversity actions. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). The purpose of New York's No-Fault Insurance Law is to promote prompt resolution of injury claims, limit cost to consumers and alleviate unnecessary burdens on the courts. *Pommells v. Perez,* 4 N.Y.3d 566, 567 (2005) (citations omitted). In order for an injured party to recover

against the car owner or driver for non-economic loss, the injury must be defined as "serious." N.Y. Ins. Law § 5104(a) (McKinney 2007). The No-Fault Insurance Law defines a personal injury as "serious" if it results in:

> (1) death;
> (2) dismemberment;
> (3) significant disfigurement;
> (4) a fracture;
> (5) loss of a fetus;
> (6) permanent loss or use of a body organ, member, function or system;
> (7) permanent consequential limitation of use of a body function or system; or
> (8) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law. § 5102(d) (McKinney 2007).

Summary judgment against a plaintiff who seeks recovery under New York's No-Fault Insurance Law is appropriate when the evidence would not warrant a jury finding that the injury falls within one of the eight statutory categories. *Licari v. Elliott,* 57 N.Y.2d 230, 237 (1982). Thus, once a defendant establishes a *prima facie* case that plaintiff's injuries are not serious, the burden shifts to plaintiff to demonstrate that she has endured a serious injury. *See Williams v. Ritchie,* 139 F. Supp. 2d 330, 334 (E.D.N.Y. 2001) (citing *Morrone v. McJunkin,* No. 98 Civ. 2163, 1998 WL 872419, at *1 (S.D.N.Y. Dec. 15, 1998)). For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians. *Id*. (citations omitted). The defendant's summary judgment motion may be premised on unsworn reports by the plaintiff's physicians, but the defendant must provide evidence from its own physicians in the form of sworn affidavits. *Id*. (citations omitted).

Although plaintiffs Maria and Benjamin Rand claimed to have suffered four of the eight categories of serious injury listed in Section 5102(d), MJ Matsumoto only considered the "permanent consequential limitation of use of a body . . . member" and "significant limitation of use of a bodily system or function" categories, finding that the evidence presented by plaintiffs was sufficient to raise a genuine issue of fact as to whether Maria and Benjamin Rand's injuries are "serious." As a preliminary matter, MJ Matsumoto found, and the parties do not dispute, that defendants submitted sufficient medical evidence to meet their burden of proving a *prima facie* case that Maria and Benjamin Rand's injuries were not "serious" through their submission of Dr. Richard Lechtenberg's and Dr. Menachem Epstein's affirmed medical reports. Thus, the burden shifted to plaintiffs to demonstrate that a genuine issue of material fact existed as to whether Maria and Benjamin Rand sustained serious injuries as a result of the July 24, 2003 accident.

Plaintiffs provided objective evidence of a serious injury through the affirmed reports of Dr. Irving Friedman, a neurologist who examined Maria on June 1, 2006, and Dr. Leonard Bleicher, a doctor of physical medicine who examined Maria on June 8, 2005 and Benjamin on August 29, 2005. Regarding Maria's range of motion test results, Dr. Friedman found as part of his physical exam that: "Cervical flexion and extension were guarded to 30 degrees out of 45. Cervical rotation was guarded to 60 degrees out of 90 right and left, i.e. diffuse 33% deficit at the cervical spine with passive and active range of motion." (Maria Rand Decl. Ex. C at 2.) Similarly, after conducing range of motion tests of Maria's spine and right shoulder, Dr. Bleicher noted the following restrictions: lumbrosacral spine, ride side flexion, 10 degrees out of a normal 15 to 20 degrees; and right shoulder, internal rotation, 40 degrees out of a normal 60 to 100 degrees. (Maria Rand Decl. Ex. E at 2-3.) Overall, Dr. Bleicher's impression was that: "Maria Rand suffers from numerically and objectively

4

determined restrictions of range of motion of the right shoulder, cervical and lumbar spine, and excessive laxity in the right ankle." (*Id*. at 4.) With respect to Benjamin's range of motion test results, Dr. Bleicher noted the following restrictions: lumbrosacral spine, left side flexion, 10 degrees out of a normal 15 to 20 degrees; left shoulder joint, elevation through abduction, 160 degrees out of a normal 170 to 180 degrees, and external rotation, 70 degrees out of a normal 80 to 90 degrees. (Benjamin Rand Decl. Ex. A at 2.) Dr. Bleicher found that "Benjamin Rand suffers from numerically and objectively determined restrictions of ranges of motion of the left shoulder, right knee, cervical and lumbar spine." (*Id*. at 4.) Moreover, Dr. Epstein's evaluation, submitted by defendants, also reveals a 33 percent reduction in the ranges of motion for Benjamin Rand's cervical spine (on flexion, extension, lateral bending, and lateral rotation) and his lumbrosacral spine (on extension, lateral bending, and rotation), and a 22 percent reduction in the range of motion for his lumbrosacral spine, on flexion. (Karan Certification in Support Ex. H at 2-3.)

From these facts alone, the court finds that plaintiffs have raised triable issues of fact with respect to whether Maria and Benjamin Rand suffered serious injuries. Further, there is medical testimony that plaintiffs' range of motion limitations are directly and causally related to the injuries Maria and Benjamin sustained on July 24, 2003. (Maria Rand Decl. Exs. C, E; Benjamin Rand Decl. Ex. A.) It must be reminded that "[w]hile there is no set percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes." *Hodder v. United States,* 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) (collecting New York cases).

The fact that there are conflicting medical opinions that are based on objective medical examinations performed at different times further supports this court's conclusion that summary

judgment would be inappropriate on this matter. It is not for the court to decide which expert opinion is more persuasive. The conflicting opinions "merely create[] a credibility question for the jury to resolve . . . and plaintiff is entitled to the benefit of every favorable inference." *Holbrook v. Jamesway Corp.,* 172 A.D.2d 910, 911 (3d Dep't 1991) (citation omitted) (testimony of plaintiff's physician supported plaintiff's contention that spinal ligaments were torn producing pain, swelling, spasms and permanent limitation of motion, and so established *prima facie* case).

Furthermore, defendants' argument, based on two Appellate Division cases, that plaintiffs failed to meet their burden to submit medical evidence contemporaneous with the accident, establishing their initial range of motion restrictions, is unavailing. *See Thompson v. Abarsi*, 15 A.D.3d 95 (1st Dep't 2005); *Lanza v. Carlick,* 279 A.D.2d 613 (2d Dep't 2000). The court first notes that it is unaware of any federal case granting summary judgment on this basis. Moreover, the Appellate Division cases relied on by defendants demonstrate that the absence of medical records showing range of motion restrictions immediately following the accident is not dispositive; and in any event, the cases are distinguishable. For instance, in *Thompson,* the Appellate Division found that plaintiff failed to raise a triable issue of fact that he sustained a serious injury because the record lacked any competent evidence of plaintiff's treatment other than two visits to a neurologist two and one-half years apart. 15 A.D.3d at 99. Moreover, despite a positive MRI finding as to plaintiff's cervical spine two months after the automobile accident, plaintiff in *Thompson* provided no objective findings contemporaneous with the accident showing any initial range or motion restrictions on plaintiff's cervical spine. *Id*. at 98. Plaintiff further failed to provide any objective finding based on a recent examination. *Id*. at 97 ("In order to raise a triable issue of fact, plaintiff must demonstrate a limitation of range of motion sustained by objective medical findings that are based on a recent

examination of the plaintiff.") (internal quotations and citations omitted). Similarly, the court in *Lanza* found that the plaintiff did not raise a triable issue of fact because, not only did the plaintiff fail to submit any proof contemporaneous with the accident showing any initial range of motion restrictions, the plaintiff also failed to set forth what objective tests, if any, her doctor performed in arriving at his conclusions. 279 A.D.2d at 614.

Here, by contrast, the record sets forth in detail both Maria and Benjamin Rand's medical histories following the July 24, 2003 accident. Maria was treated at St. Vincent's Hospital immediately after the accident, and, although her x-rays revealed that she did not have any broken bones, the Hospital gave Maria a neck brace and sling for her arm. Maria then followed up with her primary care physician, Dr. Heller, in August or September 2003. Dr. Heller referred Maria to a neurologist, Dr. Willer, who took an MRI of her spine and performed neurological testing. Dr. Heller also directed Maria to undergo physical therapy, which she received for her middle back and right arm at Masfield Therapy for approximately two months. Maria then began receiving physical therapy, acupuncture and chiropractic treatment for her back and right arm at AB Medical, which lasted for approximately three months. Maria also saw a psychotherapist for about three months following the accident, and received massage therapy on her right arm and back until November 2003. (Defs.' Ex. C, Maria Rand Dep. dated Nov. 3, 2004, at 54-90.) Although Benjamin did not receive any treatment immediately following the accident, he visited Dr. Hellman about two weeks later, complaining of a stiff back, pain in his left shoulder, and tingling in his arms and feet. Dr. Hellman referred him to Dr. Willer who performed nerve tests. Dr. Willer also took MRIs of Benjamin's head, back and shoulder, and referred him to a spine specialist, Dr. Swab. For about two months after the accident, Benjamin received physical therapy and massage therapy at Masfield Therapy. He then switched to

7

AB Medical, where he received physical therapy, acupuncture, and chiropractic services for about two and one half months. (Defs.' Ex. D, Benjamin Rand Dep. dated Nov. 3, 2004, at 60-80.) In addition, plaintiffs have also provided a reasonable explanation for the cessation in treatment of their injuries: the treatments were not achieving any significant improvements in their conditions and the financial cost was prohibitive. (Maria Rand Decl. ¶¶ 27-30; Benjamin Rand Decl. ¶¶ 19-22.) *See also Shapurkin v. SSI Services FLQ, Inc.,* No. 03 Civ. 5240, 2005 WL 2002452, at *7 (E.D.N.Y. Aug. 19, 2005) ("As courts have noted, 'a plaintiff should be free to explain a gap in treatment based on impecuniousness.'") (quoting *Panchmia v. Tauber,* 3 Misc.3d 849, 775 N.Y.S.2d 490, 494 (N.Y. Civ. Ct. 2004). Finally, the affirmed reports of Dr. Friedman and Dr. Bleicher fully detail the objective tests performed on Maria and Benjamin Rand, and are based on the most recent examinations of plaintiffs – Dr. Friedman examined Maria on June 1, 2006, and Dr. Bleicher examined her on June 8, 2005 and Benjamin on August 29, 2005.

Accordingly, to the extent defendants argue that plaintiffs' evidence of personal injury fails to meet the statutory threshold because plaintiffs did not proffer range of motion test results contemporaneous with the accident, the court finds that it is unnecessary for plaintiffs to provide such information to defeat a motion for summary judgment. At trial, plaintiffs will bear the burden of proving that they suffered serious injuries within the meaning of Section 5102(d). It is a burden plaintiffs may fail to carry. However, for purposes of a motion for summary judgment, plaintiffs have submitted sufficient evidence to support the existence of a genuine issue of material fact as to whether they sustained a "permanent consequential limitation of use of a body . . . member" or a "significant limitation of use of a body function or system."

**Conclusion**

After a *de novo* review of the portion of the R&R to which defendants object, the court overrules defendants' objections and adopts Judge Matsumoto's R&R in its entirety. Defendants' motion for summary judgment is hereby denied.

SO ORDERED.

DATED: Brooklyn, New York
May 8, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge